IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Jackie Lewis Robinson,<br>Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | 1:12cv112 (TSE/TCB) |
| Commonwealth of Virginia, et al.,<br>Defendants. | )<br>)<br>) | |

MEMORANDUM OPINION

Jackie Lewis Robinson, who is civilly committed to the Virginia Center for Behavioral Rehabilitation ("VCBR") and is acting pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, accompanied by a request to proceed in forma pauperis. Plaintiff alleges that his constitutional and contractual rights were breached when the Commonwealth of Virginia "nulled" its agreement under the Community Living Incentive Program, or "CLIP," to pay him "up to $30.00 a month" for compliance with its terms. After careful review, the complaint must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim for which § 1983 relief is available.[1]

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
(1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
(2) seeks monetary relief from a defendant who is immune from such

I.

Plaintiff alleges that he entered into a Community Living Incentive Program contract with the Commonwealth of Virginia on December 4, 2009. Review of the contract, which plaintiff has attached as an exhibit to his complaint, reveals that by its terms, an inmate who chooses to opt in to CLIP could earn up to $30 per month based on his performance in the areas of room health and safety compliance, treatment program attendance, and personal conduct. If an inmate receives a score of "excellent" in each of these categories, he would receive the full possible amount of $30. If the inmate achieves only a "good" or "acceptable" rating in a category he would receive correspondingly less money, and if he scored "not acceptable" in all categories he would receive no compensation. Compl., Ex. 1B.

On December 29, 2011, Program Services at VCBR addressed a memorandum to all residents in regards to the Work Readiness Program, stating that after a meeting the previous day "many residents expressed concerns about the monetary amount of the VCBR work readiness training stipend," and promising that such concerns would be addressed after review of the budget. Compl., Ex. 2A. On December 29, 2011 and again on January 9, 2012, plaintiff filed informal complaints charging that the Work Readiness Program constituted a breach of the CLIP contract because it misappropriated CLIP's budget fund without authority. Both complaints were deemed inappropriate as concerning policy disagreements. Compl., Ex. 1A, 2B.

In the instant case, plaintiff sets out three "issues": 1) breach of his CLIP contract; 2) "failure in specific performance of contract;"and 3) violation of his rights under Article I, Section 10 of the Constitution, which prohibits a state from passing any law impairing the obligation of

---

relief.

contracts. Compl. at 3. Plaintiff also alleges that abrogation of his CLIP contract violated his right to equal protection, "free trade laws, anti-trust laws," the Thirteenth Amendment, and the "Fair Labor Act," and he charges that a "state sponsored illegal monopoly" is being set up at VCBR, because he must now accept tokens rather than cash that can be spent only at his institution's store. The named defendants are the Attorney General of Virginia and Kimberly Runion, the Director of VCBR. The only prayer for relief discernable in the complaint is a prayer for specific performance of the terms of the CLIP contract.

## II.

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a

plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

Courts may also consider exhibits attached to the complaint. United States ex rel. Constructors, Inc. v. Gulf Ins. Co., 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 299 (2d ed.1990), cited with approval in Anheuser-Busch v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). Where a conflict exists between "the bare allegations of the complaint and any attached exhibit, the exhibit prevails." Gulf Ins. Co., 313 F. Supp. 2d. at 596 (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir.1991)).

### III.

There are a number of problems with Robinson's complaint. First, although district courts have a duty to construe pleadings by pro se litigants liberally, a pro se plaintiff nevertheless must allege a cause of action. Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). To state a cause of action under § 1983, a plaintiff must allege facts indicating he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Here, plaintiff names as defendants the Attorney General of Virginia and the Director of VCBR, but he includes no factual allegations explaining how either of these individuals personally acted to deprive him of his rights. At present, then, no claim has been stated against either defendant.

Ordinarily, because plaintiff is proceeding pro se, under such circumstances he would be

allowed an opportunity to amend his allegations, to explain the manner in which he believes the defendants had personal knowledge of and involvement in the alleged violation of plaintiff's rights. Here, however, that action would be futile, for the following reasons.

First, while the complaint is not a model of clarity, a fair reading of plaintiff's allegations makes it apparent that his chief concern is the alleged breach of his CLIP contract. Indeed, as noted, the only relief plaintiff seeks is specific performance of the contract's terms. However, a federal court has no jurisdiction over such a claim for breach of contract in a § 1983 action. To the extent that plaintiff relies on the contract rather than the Constitution or federal laws as the basis of his lawsuit, no federal question is presented under 28 U.S.C. § 1331. Nor do plaintiff's allegations, taken as true, meet the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332. Therefore, plaintiff's breach of contract claims are subject to dismissal for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). See Smith v. Corrections Corp. of America, 19 Fed. App'x 318 (6th Cir. Sept. 14, 2001) (holding that breach of contract claims by DC inmate did not implicate federal question jurisdiction).[2]

Second, plaintiff's conclusory assertions that abrogation of the earning opportunities afforded by the CLIP contract violates his rights under "free trade laws, anti-trust laws" and the "Fair Labor Act" fare no better. Numerous courts have recognized that the employment of incarcerated persons "is not representative of the typical private sector employer/employee relationship," and that while such work programs have "valid rehabilitative aspects to [them], the labors of ... inmates are of a penological nature." Watson v. Rios, 2007 WL 2792179 at *4 (E.D.

---

[2]In deference to plaintiff's pro se status, he is advised that nothing in this Opinion would preclude him from filing a state lawsuit to vindicate his contractual rights. This Opinion neither addresses nor opines on the merits of any breach of contract claim plaintiff may have.

Ky. Sept. 21, 2007). Therefore, inmates who perform labor under the auspices of institutional work programs cannot be likened to persons in the private sector who choose to participate in the work force. George v. Badger State Industries, 827 F. Supp. 584 (W.D. Wisc. 1993). As a result, courts have held that federal labor regulations have no applicability to incarcerated workers. See, e.g., Harker v. State Use Industries, 990 F.2d 131, 135 (4th Cir. 1993) (collecting cases and declining to apply the economic reality test when alleged employer is a state-structured prison industries program); Vanskike v. Peters, 974 F.2d 806, 809-10 (7th Cir. 1992) (declining to extend minimum wage protections to prisoners working within institutions); Lentz v. Anderson, 888 F.Supp. 847, 849 (N. D. Ohio 1995) (holding that an employer/employee relationship subject to the Fair Labor Standards Act does not exist between the state and an inmate); Sims v. Parke David & Co., 334 F.Supp. 774, 782 (E.D. Mich. 1971) (inmates working at a private drug clinic inside a prison were not covered by the Fair Labor Standards Act). Here, then, while it is unclear exactly what aspect of "free trade laws, anti-trust laws" and the "Fair Labor Act," plaintiff believes offer him protection, he is mistaken. Because labor performed in an institution or for a separate entity operated by a correctional labor department is performed as part of a sentence of incarceration, George, 827 F.Supp. at 588, it does not fall within the ambit of the federally-protected "free labor situation of true employment." Vanskike, 974 F.2d at 809.

Third, to the extent that plaintiff's complaint can be liberally construed as alleging constitutional violations under § 1983 arising from abrogation of the CLIP contract, his allegations fail to state a claim. In a situation analogous to the earning opportunities extended to inmates through the CLIP program, it is well established that prisoners have no constitutional right to job opportunities while incarcerated. Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980);

Awalt v. Whalen, 809 F. Supp. 414, 416-17 (E.D. Va. 1992) (prisoners do not have a constitutionally-protected right to work while incarcerated, or to remain in a particular job once assigned). A prisoner has no constitutionally- protected liberty interest in any particular job assignment or work detail. Johnson v. Knable, 862 F.2d 314, 1988 WL 119136, **1 (4th Cir. 1988) (table) ("[P]rison work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate."); Olim, 461 U.S. at 250. "[T]he classifications and work assignments of prisoners ... are matters of prison administration, within the discretion of the prison administrators...." Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir.), cert. denied, 435 U.S. 1009 (1978); accord, Mitchell v. Murray, 856 F. Supp. 289, 293 (E.D. Va. 1994). Similarly, prisoners have no due process right to participate in vocational or educational programs. Women Prisoners of Dist. of Columbia Dep't of Corr. v. Dist. of Columbia, 93 F.3d 910, 927 (D.C. Cir. 1996) (inmates do not have a constitutional right to work or educational opportunities). Therefore, to the extent that plaintiff alleges claims for violation of his rights to due process and equal protection arising from VCBR's failure to continue the earning opportunities provided under the CLIP contract, he fails to state a claim for which § 1983 relief is available.

Lastly, to the extent that plaintiff argues that the new Work Readiness Program with its requirement that residents work for tokens rather than cash constitutes slavery and thus violates the Thirteenth Amendment, the Court finds the allegations subject to dismissal under § 1915A(b)(1) as frivolous.

## IV.

For the foregoing reasons, this complaint must be dismissed pursuant to 28 U.S.C. §

1915A(b)(1) for failure to state a claim for relief pursuant to § 1983. An appropriate Order shall issue.

Entered this 29th day of February 2012.

Alexandria, Virginia

T. S. Ellis, III
United States District Judge